UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TOMMY L. FINLEY,                       )
                                       )
              Petitioner,              )
                                       )
    v.                                 )         No.  4:06CV1013 TIA
                                       )
JEREMIAH W. NIXON,                     )
                                       )
              Respondent.              )

## MEMORANDUM AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This cause is before the Court on Oklahoma state prisoner Tommy L. Finley's pro se petition

for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (filed July 5, 2006/Docket No. 3).  All

matters are pending before the undersigned United States Magistrate Judge, with the consent of the

parties, pursuant to 28 U.S.C. § 636(c).

Petitioner was convicted, after a bench trial, of three counts of using the mails with intent that

a murder-for-hire be committed in violation of 18 U.S.C. § 1958(a).  See United States v. Finley,

Case No. 4:97cr455(SNL) (E.D. Mo July 29, 1998).  On appeal Petitioner's convictions were

affirmed.  United States v. Finley, Case No. 98-2721 (8th Cir. April 29, 1999). The following year,

Petitioner sought and was denied relief pursuant to 28 U.S.C. § 2255.  Finley v. United States, Case

No. 4:00cv634 (SNL) (E.D. Mo. Aug. 3, 2000).  After denying a certificate of appealability, the

Eighth Circuit Court of Appeals dismissed the appeal.  Finley v. United States, Case No. 00-

3313EMSL (8th Cir. Nov. 13, 2000).

In October 2002, Petitioner again sought and was denied relief pursuant to 28 U.S.C. § 2255.

Finley v. Olsen, Case No. 4:02cv1523(SNL) (E.D. Mo. Feb. 7, 2003).  In November 2004, Petitioner

filed another motion seeking § 2255 relief which Judge Stephen Limbaugh denied. <u>Finley v. United States</u>, Case No. 4:04cv1655(SNL) (E.D. Mo .Dec. 9, 2004). In December 2004, Petitioner filed another § 2255 motion, contending that his convictions and sentences were void. On February 10, 2005, Judge Limbaugh denied the motion. <u>Finley v. United States</u>, Case No. 4:04cv1818(SNL) (E.D. Mo. Feb. 10, 2005). In April 2005, Petitioner filed a petition for writ of audita querela[1]. <u>Finley v. United States</u>, 4:05cv695(SNL) (E.D. April 28, 2005). The Court determined that the Supreme Court's decision in <u>United States v. Booker</u>, U.S. (2005), is not the type of post-judgment event for which the writ can be granted and denied his petition for writ of audita querela without prejudice. <u>Finley v. United States</u>, 4:05cv695(SNL), 2005 WL 1474113 (E.D. Mo. June 14, 2005).

At the time Petitioner Tommy L. Finley filed his <u>pro</u> <u>se</u> habeas petition on July 5, 2006, he was incarcerated at United States Penitentiary in Terre Haute, Indiana, (USP-Terre Haute) where he was serving a 216-month term of imprisonment after being convicted in this Court of three counts of using the mails with intent that a murder-for-hire be committed in violation of 18 U.S.C. § 1958(a). <u>See</u> <u>United States v. Finley</u>, Case No. 4:97CR455 SNL (E.D. Mo, July 29, 1998) (judgment imposed). In the instant petition, Petitioner challenges his Missouri state-court convictions, two counts of possession of a controlled substance, and one count of sexual assault. <u>State v. Finley</u>, 136 S.W.3d 823(Mo. Ct. App. 2004). These sentences were to run consecutively with Petitioner's federal prison sentence from another conviction. In the instant petition, Petitioner does not challenge the legality of his federal custody.

---

[1]Audita querela is an old common-law writ which permits a defendant to obtain "'relief against a judgment or execution because of some defense or discharge arising subsequent to the rendition of judgment.'" <u>United States v. Johnson</u>, 962 F.2d 579, 582 (7th Cir. 1992) (quoting 11 Charles A. Wright & Arthur Miller, <u>Federal Practice and Procedure</u> § 2687, at 325 (1975)).

On March 11, 2003, Petitioner was convicted by a jury in the Circuit Court of St. Louis County, Missouri, of sexual assault, and two counts of possession of a controlled substance and sentenced as a prior and persistent offender to a term of twenty years for each count with the sentences to run concurrently but consecutively with his federal sentence from another conviction. (Resp. Exh. B at 80, 82-83 and B at 97-99). Petitioner appealed the judgment. (Resp. Exhs. D and E at 51). The Missouri Court of Appeals affirmed the judgment on June 15, 2004 finding the State did not violate the anti-shuttling provision of the Interstate Agreement on Detainers when the State secured his presence and transferred him to the St. Louis County Department of Justice and then returned him to federal custody, without bringing the state cause to trial. (Resp. Exh. H). On September 21, 2004, Petitioner filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence. (Resp. Exh. I at 3-20). On January 3, 2005, Petitioner's appointed counsel filed an Amended Motion. (Resp. Exh. I at 25-47). The post-conviction relief court denied Petitioner's post-conviction motion on May 27, 2005. (Resp. Exh. D at 50-61). On May 2, 2006, the Missouri Court of Appeals affirmed the denial of Petitioner's post-conviction relief. (Resp. Exh. M). Petitioner pursued no other action for review of his conviction and sentence in state court. The instant petition for writ of habeas corpus, signed by Petitioner on June 26, 2006, was filed in this Court on July 5, 2006, upon its receipt.

Petitioner is currently incarcerated at Greenville Federal Correctional Institution in Greenville, Illinois, pursuant to the sentence and judgment of the Circuit Court of St. Louis County, Missouri and the federal conviction. In the instant petition for writ of habeas corpus, Petitioner raises four grounds for relief.

(1) That the State of Missouri violated the Interstate Agreement on Detainers by returning Petitioner to federal custody before trying him on the state charges;

(2) That he received ineffective assistance of counsel in that counsel failed to pursue his pro se motion to dismiss based on lack of jurisdiction.

(3) That he was denied his right to a speedy trial; and

(4) That the trial court erred in giving instructions on Counts 3 and 4.

In response, Respondent contends that the undersigned should deny the instant petition inasmuch as the claims are either procedurally barred or without merit.

## 1. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1996); *see also* Boerckel, 526 U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Smittie, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error, or that a fundamental miscarriage of justice would occur if the Court were not to address the claims. Coleman v. Thompson, 501 U.S. 722 (1991); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995). Before reviewing any claims raised in a habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis. Rhines v. Weber, 544 U.S. 269 (2005).

A review of the record shows Petitioner's claims for relief to be exhausted either because Petitioner has properly raised the claims in state court or has no available non-futile state remedy by which he could now pursue his claims.

## 2. Procedural Default

Respondent contends that Petitioner has procedurally defaulted on the claims raised in Grounds 3 and 4, because Petitioner failed to raise these claims on direct appeal or in his post-conviction appeal. The undersigned agrees that Petitioner is procedurally barred from presenting these claims in federal court.

Failure to present claims to the Missouri Court of Appeals during a petitioner's direct appeal or in a post-conviction proceeding constitutes procedural default. Evans v. Leubbers, 371 F.3d 438, 445 (8th Cir. 2004). A federal court lacks the authority to reach the merits of procedurally defaulted claims unless petitioner can show cause and prejudice for the default or demonstrate a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 314-15 (1995). "Establishing cause requires a showing of some external impediment that frustrates a prisoner's ability to comply with the state procedural rules." Malone v. Vasquez, 138 F.3d 711, 719 (8th Cir. 1998). Examples of such cause include a showing that a factual or legal basis for a claim was not reasonably available to counsel, or that interference by officials made compliance impracticable. Murray v. Carrier, 477 U.S. 478, 488 (1986)(citation omitted).

A federal court lacks the authority to reach the merits of procedurally defaulted claims unless Petitioner can show cause and prejudice for the default or demonstrate a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 314-15 (1995). "Establishing cause requires a showing of some external impediment that frustrates a prisoner's ability to comply with the state procedural

rules." Malone v. Vasquez, 138 F.3d 711, 719 (8th Cir. 1998). Examples of such cause include a showing that a factual or legal basis for a claim was not reasonably available to counsel, or that interference by officials makes compliance impracticable. Murray v. Carrier, 477 U.S. 478, 488 (1986)(citation omitted).

The miscarriage of justice exception applies only in extraordinary cases, particularly if a constitutional violation resulted in the conviction of an innocent person. Schlup, 513 U.S. at 327; Murray, 477 U.S. at 496. This requires petitioner "to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." Schlup, 513 U.S. at 324. The standard compels petitioner to persuade the court that in light of new evidence no juror would have found him guilty beyond a reasonable doubt. Schlup, 513 U.S. at 329; Perry v. Norris, 107 F.3d 665,666 (8th Cir. 1997). The Supreme Court noted in Schlup that claims of actual innocence are rarely successful because this type of evidence is usually unavailable. Id.

This Court is precluded from addressing the merits absent a showing of cause and prejudice or a miscarriage of justice. Petitioner has not demonstrated cause and prejudice to overcome the procedural bar. Likewise, Petitioner neither argues nor is able to show actual innocence. Therefore, this Court must dismiss claims raised in Grounds 3 and 4 as procedurally defaulted.

### III.    Claims Addressed on the Merits

Petitioner's remaining claims appear to state claims that he is in custody in violation of his constitutional rights. Such claims are cognizable and thus may be addressed by this Court.

Section 2254(d)(1) requires federal habeas courts to test the determination of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United

States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id., 529 U.S. at 380-83.

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 125 S.Ct. 1432, 1438 (2005). A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." Id. at 1439; Williams, 529 U.S. at 405. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

As an initial matter, the undersigned notes that the post-conviction court summarized the facts regarding the issue on appeal as follows:

> 1. Movant, Tommy Finley, was indicted by a grand jury on one count of sexual assault, one count of armed criminal action and two counts of possession of a controlled substance in April. 1997. The charges and indictment are filed in cause number 97CR-1553 in the Circuit Court of St. Louis County. The sexual assault and armed criminal action counts are based on allegations that on November 8, 1996, Finley injected the victim, ..., with Phenobarbital and had sexual intercourse with her without her consent. During the investigation of the sexual assault and the execution of a search warrant of Finley's home, police found two controlled substances and charged Finley with the illegal possession of the controlled substances.

> 2. On March 12, 1997 K.T. Schmidt entered his appearance for Finley in cause

97CR-1553. Finley was released on bond.

3. At the time of the offense, Finley was on probation to the United States District Court for the Eastern District of Missouri in cause 93CR217GFG. On March 26, 1997, the United States Marshal's Service (USMS) took custody of Finley for a probation violation in cause 93CR217GFG. On June 24, 1997, the court revoked Finley's probation in cause 93CR217GFG and sentenced him to 10 months imprisonment. Finley served that sentence at the jail in the City of Jennings, Missouri. The USMS contracts with a number of county and municipal jail facilities to house federal detainees and one of those facilities is the jail in the City of Jennings, Missouri. (Jennings jail) The sentence in 93CR217GFG ended on January 25, 1998.

4. While in custody in the Jennings jail, Finley decided to have the witnesses in the sexual assault case bought off or killed. Authorities were tipped off to Finley's plans and an undercover agent with the Federal Bureau of Investigation posing as a contract killer met with Finley two times at the Jennings jail. The investigation led to a three count federal indictment for the use of the U.S. mails with the intent to facilitate murder for hire in cause 97CR455SNL in the United States District Court for the Eastern Division of Missouri. Finley was held by the USMS in cause 97CR455SNL beginning November 24, 1997 at the Jennings jail. Once Finley completed his sentence in 93CR217GFG, he remained in custody at the Jennings jail in cause 97CR455SNL.

5. On November 17, 1997, Mr. Schmidt obtained an order from the court revoking the bond granted on March 12, 1997 releasing the surety, Ms. Lois Finley Bryant. the order granted Finley credit for jail time served in Jennings since his arraignment on April 29, 1997. On November 26, 1997, cause 97CR-1553 was set for trial on January 26, 1998. On January 28, 1998, the court ordered a warrant in cause 97CR-1553 because Finley did not appear for trial as he was in federal custody.

6. On April 28, 1998 Finley was found guilty in cause 97CR455SNL of three counts of use of the U.S. mails with the intent to facilitate murder for hire. On July 29, 1998, the court sentenced Finley to 216 months imprisonment. Finley remained at the Jennings jail to await his transfer to the United States Bureau of Prisons (BOP). Finley was transferred by the USMS from Jennings jail to the United States Penitentiary at Terre Haute, Indiana to serve the sentence in 97CR455SNL on September 16, 1998. The USMS released Finley to the BOP on September 21, 1998.

7. On August 10, 1998, Finley was transferred from the USMS to the St. Louis County Department of Justice Services (DJS) pursuant to a Writ of Habeas Corpus Ad Prosequendum. According to a memorandum from the clerk of the court, Finley was being brought to St. Louis County Circuit Court to enter a plea of guilty and be sentenced. The memorandum does not state which party had requested that Finley

be brought in to court. There is nothing in the record to indicate what happened when Finley was brought to St. Louis County Circuit Court, and the next entry in the court record is a memo entered April 16, 1999 stating: "Cause not having been disposed of, defendant being in federal custody, warrant ordered to issue." On August 26, 1998, Finley was released from DJS to the USMS. The USMS placed Finley back in the Jennings jail until transfer to the United States Penitentiary at Terre Haute on September 16, 1998.

8. On April 16, 1999, the court issued a new warrant in cause 97CR-1553.

9. On May 26, 1999, Finley filed a motion to dismiss the criminal case in St. Louis County Circuit Court cause 97CR-1553 alleging a violation of the Interstate Agreement on Detainers (IAD). The court denied this motion on June 7, 1999. Finley asked for an appeal from the court's denial of the motion to dismiss and was informed by the court that there was no final judgment for him to appeal. Finley's motion requested a dismissal of the charges for a violation of the anti-shuttling provisions of Article IV of the IAD and claimed a general violation of articles III, IV and V of the IAD. Finley's motion did not request a disposition of the detainer under Article III.

10. On July 20, 1999, Rudolfo Rivera filed pleadings prepared by Finley with this court. While there was no formal withdrawal of Mr. Schmidt from the case, this court was aware that Mr. Schmidt had left the practice of law in the St. Louis area at the that time.

11. On October 24, 2001, Finley made a request for disposition of the detainer to the United States Penitentiary at Terre Haute pursuant to Article III of the IAD. The staff then notified authorities in St. Louis County. On February 2, 2002, the St. Louis County Prosecuting Attorney accepted temporary custody of Finley to honor Finley's request for disposition of the detainer. On February 26, 2002, Finley was taken into custody at the St. Louis County Department of Justice Services and has remained there until this date.

12. On April 18, 2002, Finley filed an amended motion to dismiss through counsel Rudolfo Rivera. The motion cited the same claims of a violation of the IAD in the motion to dismiss. In addition, Mr. Rivera added that "Defendant requested final disposition upon receiving the notice of the detainer of 10/7/98." On May 31, 2002, the parties provided this court with a stipulation of facts and documents outlining Finley's custody and legal claims from his arrest on March 26, 1997 to the present. On that date, the court also set the case for trial on August 19, 2002.

13. On June 4, 2002, after considering the evidence and case law submitted by the parties, this court issued an order ruling that there was no violation of the IAD. This

court concluded that Finley was in custody in the Jennings jail awaiting transfer to a penitentiary and was not undergoing rehabilitation, thus the transfer to the St. Louis County Jail did not interrupt any rehabilitation programs in violation of the IAD.

14.  On June 13, 2002, Finley filed a motion to proceed pro se.  On June 17, 2002, Rudolfo Rivera was given leave to withdraw as counsel for Finley.  This court appointed the office of the public defender to represent Finley.  On August 12, 2002, Karen Bolton, Assistant Public Defender entered her appearance for Finley.  On August 19, 2002, Ms. Bolton asked the court for a continuance of the trial date to allow her to file a writ on whether this court inappropriately denied the motion to dismiss.

15.  On September 23, 2002, Ms. Bolton filed a Petition for a Writ of Prohibition in the Missouri Court of Appeals for the Eastern District.  The claim filed in the Eastern District Court of Appeals is generally the same as the claim filed here - that this court erred in not dismissing the case based on the alleged violation of the IAD.  The court assigned the petition cause number ED81807 and denied the petition on October 10, 2002.

16.  Soon after filing the petition on September 23, 2002, Ms. Bolton left the employ of the Missouri Department of Public Defender System.  John Krehmeyer, Assistant Public Defender, entered as counsel for defendant and filed an amended motion to dismiss the indictment based on violation of the IAD article III time standards.  On October 21, 2002 the court took argument on the Motion to Dismiss and denied it on the record.  The court continued the trial to the week of January 6, 2002 for good cause shown and to allow Mr. Krehmeyer to prepare for trial.

17. On January 3, 2003, in a hearing in open court, this court granted Finley's request to represent himself at trial.  The court allowed Mr. Krehmeyer to withdraw as counsel for Finley.  The court also denied Finley's motions to reargue the motion to dismiss and a motion to dismiss on grounds of a violation of his speedy trial rights.

18.  On January 3, 2003, trial was reset to March 10, 2003 at the request of the Finley, pro-se.

19.  On January 31, 2003, Finley, pro-se, filed his Petition for a Writ of Prohibition with Supreme Court of Missouri.  That petition was denied.

20.  On March 10, 2003, trial began in 97CR-1553 with Finley representing himself. This court found Finley to be a prior and persistent offender.  On March 12, 2003, the jury returned a verdict of guilty of sexual assault and two counts of possession of controlled substance and not guilty of armed criminal action.

21. On April 21, 2003, this court sentenced Finley to 20 years imprisonment as a persistent offender on counts for count 1 sexual assault and counts 3 and 4, possession of a controlled substance. The sentences in counts 1, 3, and 4 were to run concurrent with each other, but consecutive to the sentence Finley is presenting serving in 97CR455SNL.

22. An appeal of the judgment and sentence was taken by defendant to the Missouri Court of Appeals for the Eastern District in Appeal No. ED82852. Finley was represented by Irene Karns of the Missouri State Public Defender. The judgment and sentence was affirmed in a per curiam opinion issued by the Court of Appeals on June 16, 2003. The mandate was issued by the court on July 16, 2004.

23. Finley filed his pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence on September 27, 2004. Movant raised nine claims of ineffective assistance of counsel or trial court error.

24. On October 5, 2004, the Court appointed the Eastern Appellate Office of the Public Defender to represent the movant in these proceedings.

25. On October 28, 2004, movant Timothy Forneris, Assistant Public Defender, entered his appearance on behalf of movant and was granted additional time to file an amended motion.

26. On January 3, 2005, movant, through counsel, filed an Amended Motion to Vacate, Set Aside or Correct the Judgment or Sentence claiming ineffective assistance of Rudolfo Rivera in failing to bring a claim of a violation of Article III of the IAD in his amended motion to dismiss and ineffective assistance of appellate counsel Irene Karns in failing to challenge the sufficiency of the evidence of the sexual assault in the appeal.

27. On January 28, 2005, this court had a pre-trial hearing with counsel and denied movant's request for an evidentiary hearing.

(Resp. Exh. I at 50-56). Inasmuch as Petitioner does not rebut these factual findings by clear and convincing evidence, they are presumed to be correct. 28 U.S.C. § 2254(e)(1).

A. __Ground 1__

In Ground 1 of the instant petition, Petitioner claims that the State of Missouri violated the Interstate Agreement on Detainers ("IAD") by returning him to federal custody before trying him on

the state charges.  In relevant part, Petitioner contends as follows:

> The State of Missouri lost jurisdiction on or about August 26, 1998 when this
> petitioner was returned to the original place of confinement without having had trial.
> The State of Missouri initiated & activated the Interstate Agreement on Detainers
> under article IV(a) when is issued a warrant on Jan. 28, 1998 and a writ of habeas
> corpus ad prosequendum (ordered from the prosecuting attorney's office) on Aug.
> 6, 1998.

(Petition, Docket No. 3, at 4).

Petitioner raised this claim on appeal and upon review of merits of this claim, the Missouri

Court of Appeals summarily denied Petitioner's claim. (Resp. Exh. H).  For the reasons set forth

below, the undersigned finds that Petitioner's claim for relief lacks merit.

The undersigned notes that on appeal, the Missouri Court of Appeals affirmed the judgment

in a cursory manner finding that no jurisprudential purpose would be served by an extended opinion.

(Resp. Exh. H).  This Court is therefore without the benefit of any extended analysis by which the

Missouri Court of Appeals made its determination that Petitioner was not entitled to relief on any of

the claims properly brought before it.  The Missouri Court of Appeals found as follows:

> In his sole point on appeal, the defendant alleges the trial court erred in denying his
> motion to dismiss brought pursuant to the Interstate Agreement on Detainers, Section
> 217.490 RSMo.  The defendant contends State violated the anti-shuttling provision
> of the Agreement when the State secured his presence and transferred him to federal
> custody, without bringing the state cause to trial.  The defendant seeks to have his
> conviction reversed, and the charges dismissed with prejudice, as directed by Section
> 217.490, art. IV(5).

(Resp. Exh. H).  Habeas relief may be granted only if the decision of the state court is "substantially

different" from what the decision would have been if that court had used the appropriate legal

standard as established by the United States Supreme Court.  Huss v. Graves, 252 F.3d 952, 956 (8th

Cir. 2001) (quoting Williams, 529 U.S. at 405).  The state court need not cite or even be aware of

the governing Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). As such, this Court must apply such established Supreme Court precedent to the facts of this case to determine whether Petitioner is entitled to relief on any of his claims.

A review of the record shows that Petitioner raised this on appeal. (Resp. Exh H). For the reasons set forth below, the undersigned finds that Petitioner's claim for relief lacks merit.

The Interstate Agreement on Detainers ("IAD") provides that

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction ... his request for a final disposition to be made of the indictment, information, or compliant ....

18 U.S.C. app. 2, § 2, art. III(a). Missouri and the United States each is a party "State" under the Agreement. United States v. Daily, 488 F.3d 796, 797 n.4 (8th Cir. 2007). The IAD allows a prisoner to demand timely adjudication of an untried indictment pending in another jurisdiction, provided he gives the prosecutor and the appropriate court adequate notice of his desire for a speedy disposition of the pending matter. Id. Once the notice requirement has been fulfilled, the prisoner must usually be brought to trial within 180 days, or the indictment must be dismissed. Id. Once the federal government lodges a detainer against a prisoner with state prison officials, the IAD applies. United States v. Mauro, 436 U.S. 340, 349 (1978). The federal government's use of a writ of habeas corpus ad prosequendum[2] to obtain custody of a state prisoner does not invoke the IAD. Id. at 340;

---

[2]"The role and functioning of the ad prosequendum writ are rooted in history, and they bear little resemblance to the typical detainer which activate the provisions of the Agreement."

United States v. Moore, 822 F.2d 35, 37 (8th Cir. 1987) (per curiam).  Similarly, the Eighth Circuit

Court of Appeals has ruled the objectives of the IAD "have no application to a pretrial detainee who

is merely awaiting trial and is not then subject to a term of imprisonment.  He has no immediate

interest in any institutional treatment or program of rehabilitation."  United States. v. Harris, 566 F.2d

610, 613 (8th Cir. 1977).

 In the instant case, Petitioner, although in federal custody, was incarcerated in a Missouri

Correctional Facility, Jennings Jail, and the charges pending against him were also in Missouri, in

particular St. Louis County.  While being held in Jennings Jail, Petitioner was transferred by writ of

habeas corpus ad prosequendum to the St. Louis County Jail where he stayed approximately ten days

before being returned to the Jennings Jail.  This act of transferring Petitioner from the Jennings Jail

to the St. Louis County Jail and then retransferring him to the Jennings Jail did not violate the IAD

inasmuch as Petitioner was transferred intrastate, not interstate.  See State ex rel. Stanley v. Davis,

569 S.W.2d 202, 210 (Mo. Ct. App. 1978) (IAD not violated where a federal prisoner in Missouri

is transferred to a Missouri court for the limited purposes of arraignment, appearances, and hearings

and then returned to the federal facility in Missouri).  Further, Petitioner was brought to St. Louis

County from the Jennings Jail on a writ of habeas corpus ad prosequendum.  The issuance and

successful return of a writ of habeas corpus ad prosequendum does not constitute a detainer sufficient

to trigger the provisions of the IAD.  Mauro, 436 U.S. at 349, 361; Leisure v. State, 828 S.W.2d

---

United States v. Mauro, 436 U.S. 340, 358 (1978).  Unlike a writ of habeas corpus ad
prosequendum, which is issued by a court, a detained may be lodged against a prisoner on the
initiative of a prosecutor or law enforcement officer.  Id.  "Rather than requiring the immediate
presence of the prisoner, a detainer merely puts the officials of the institution in which the prisoner
is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his
release from prison."  Id.

872, 876-77 (Mo. banc 1992).

Likewise, Petitioner was a pretrial detainee and not serving a term of imprisonment between January 25, 1998 and July 29, 1998. On January 25, 1998, Petitioner remained in custody at the Jennings Jail awaiting trial on the murder for hire charges even though his sentence on the probation violation ended. On April 28, 1998, Petitioner was found guilty in cause 97CR455SNL of three counts of use of the U.S. mails with the intent to facilitate murder for hire and thereafter on July 29, 1998, the district court sentenced him to 216 months imprisonment. As a pretrial detainee, the IAD had no application to Petitioner. See United States v. Pardue, 363 F.3d 695, 698 (8th Cir. 2004) (observing that the Act does not apply to pre-trial detainees).

The state court's rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of

Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

Based on the above, the state court's decision denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

**B.     Ground 2**

In Ground 2 of the instant petition, Petitioner contends that his trial attorneys were ineffective for failing to raise the claim that the Missouri courts had lost jurisdiction under the Interstate Agreement on Detainers ("IAD"). Respondent noted that although the ground might be procedurally barred, Respondent addressed the merits.

Petitioner raised this claim in his motion for post-conviction relief and on appeal of the denial of the motion. Upon review of merits of this claim, the post-conviction court and the Missouri Court of Appeals denied Petitioner relief. (Resp. Exhs. I at 8-9 and M). For the reasons set forth below, the undersigned finds that Petitioner's claim for relief lacks merit.

The motion court entered Findings of Fact and Conclusions of Law when denying Petitioner's amended post-conviction relief motion. (Resp. Exh. I at 8-9). On appeal of the denial of the post-conviction motion, the Missouri Court of Appeals affirmed the judgment denying Petitioner's Rule 29.15 motion. (Resp. Exh. M). Habeas relief may be granted only if the decision of the state court is "substantially different" from what the decision would have been if that court had used the appropriate legal standard as established by the United States Supreme Court. Huss v. Graves, 252 F.3d 952, 956 (8th Cir. 2001) (quoting Williams, 529 U.S. at 405). The state court need not cite or even be aware of the governing Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam). As such, this Court must apply such established Supreme Court precedent to the facts of this case to determine whether Petitioner is entitled to relief on any of his claims.

A review of the record shows that Petitioner raised this claim of ineffective assistance of trial counsel in his motion for post-conviction relief and on appeal of the denial of the motion. (Resp. Exhs. I at 30-37 and J at 16-23). After a review of the merits of the claim, the motion court denied Petitioner relief. (Resp. Exh. I at 8-9). The Missouri Court of Appeals addressed the claim on the merits. (Resp. Exh. M at 2-4). For the reasons set forth below, the undersigned finds that Petitioner's claim for relief lacks merit.

In his post-conviction motion and on appeal, Petitioner claimed that he received ineffective assistance of counsel in that trial counsel failed to raise the claim that the Missouri courts had lost jurisdiction under the IAD. Upon review of the claim, the motion court noted in its written decision that

3. Finley's first claim in the amended motion is that counsel Rudolfo Rivera

was ineffective in failing to amend Finley's July 20, 1999 pro se motion to dismiss to include claims that the state violated the time restrictions under article III of the IAD. Finley claims he was prejudiced because had this been done in 1999 the Court of Appeals would have found there was no jurisdiction and ordered the trial court to dismiss the case. This argument fails to satisfy the prejudice prong of the Strickland test. Article III of the IAD requires that the state brings the defendant to trial within 180 days of the receipt of the request for disposition of detainers. The time may be extended for good cause shown. Mr. Rivera included this claim in his amended motion of April 18, 2002, and the court found there were no violations of the IAD on June 4, 2002. In addition, the Article III time limit claims were specifically noted and argued before the court by Mr. Krehmeyer on October 21, 2002. Again, this court found there was no violation of Article III of the IAD. Movant's claim of an article III violation was brought before the court and denied by this court. The outcome of the claim would not be different had Mr. Rivera amended the motion to include the claim in 1999. Movant has failed to satisfy the prejudice prong. Point denied.

(Resp. Exh. I at 8-9). On direct appeal, the Missouri Court of Appeals found that counsel could not

be deemed to be ineffective for failing to raise an argument based on an alleged violation of the time

limits in June 1999 or April 2002 inasmuch as such a claim would have no merit until May 4, 2002.

(Resp. Exh. M at 4). In relevant part, the Missouri Court of Appeals opined as follows:

> In his first sub-point on appeal, Movant alleges Rivera was ineffective for failing to argue that Movant's convictions should be dismissed pursuant to section 217.490, art. III. Movant claims that Rivera's failure to raise this argument either shortly after his entry of appearance on July 20, 1999 or in his April 18, 2002 amended motion to dismiss caused Movant's direct appeal claim on this issue to fail.

> Section 217.490 is designed to encourage the expeditious and orderly disposition of detainers based on untried indictments, informations, or complaints against a prisoner who is already incarcerated in another jurisdiction. Section 217.490, art. I. Once a detainer has been lodged against a prisoner,

> > he shall be brought to trial within one hundred eight days *after he shall have caused to be delivered to the prosecuting officer and the appropriate court ... written notice of the place of his imprisonment and his request for a final disposition* to be made of the indictment, information, or complaint ... Section 217.490, art. III(1). (emphasis added).

> Pursuant to section 217.490, art. IV(5):

- 18 -

> [i]f trial is not had on any indictment, information or complaint ... prior to the prisoner's being returned to the original place of imprisonment ... such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice. Section 217.490, art. IV(5).

> In this case, on April 3, 1997, Movant was charged by indictment for the convictions at issue in this case ("Movant's charges"). Between 1997 and November of 2001, several events involving Movant took place, which are not relevant to this appeal. In November of 2001, Movant was incarcerated in the United States Penitentiary at Terre Haute, where he was serving a separate federal conviction.

> On November 4, 2001, the St. Louis County Prosecutor's Office received Movant's request for a final disposition of Movant's charges. Thus, the time period under section 217.490, art. III for Movant to be brought to trial did not expire until 180 days later, or until May 4, 2002. Accordingly, Rivera may not be deemed to be ineffective for failing to raise an argument based on an alleged violation of the time limits pursuant to section 217.490, art. III in June of 1999 or on April 18, 2002 because such a claim would have no merit until May 4, 2002. Therefore, the motion court did not clearly err in denying Movant an evidentiary hearing on his argument that Rivera was ineffective for failing to argue that Movant's convictions should be dismissed pursuant to section 217.490, art. III. Sub-point denied.

(Resp. Exh. M at 3-4) (internal footnote omitted).

At the time Petitioner's conviction became final, the law was clearly established that in order to obtain relief under the Sixth Amendment for ineffective assistance of counsel, a petitioner must show that counsel's performance was both deficient and prejudicial. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The crucial issue is whether the petitioner suffered material prejudice due to counsel's alleged deficient performance. Witherspoon v. Purkett, 210 F.3d 901, 903 (8th Cir. 2000). In order to show prejudice, Petitioner must establish that there is reasonable probability that but for trial counsel's unprofessional errors, the result of Petitioner's trial would have been different. Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In evaluating the probability of a different result, the court must

consider the totality of the evidence.  Id., 466 U.S. at 695.  Rather than second-guessing counsel's actions with the benefit of hindsight, the reviewing court must examine counsel's decisions with a high degree of deference.  Id., 466 U.S. at 689; White v. Helling, 194 F.3d 937, 941 (8th Cir. 1999) (the court "must resist the temptation to use hindsight to require that counsel's performance have been perfect.  Only reasonable competence, the sort expected of the 'ordinary fallible lawyer' ... is demanded by the Sixth Amendment") (internal citation omitted).  The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id.  "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful."  James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996).  Furthermore, even if Petitioner show counsel's performance was deficient, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Strickland, 466 U.S. at 691.

In the instant claim of ineffective assistance of counsel, Petitioner specifically contends that he received ineffective assistance of trial counsel in that counsel failed to raise the claim that the Missouri courts had lost jurisdiction under the IAD.  In addressing the claim, the motion court and the Missouri Court of Appeals determined Petitioner not to have shown a reasonable probability of a different result if counsel had follow up his pro se motion to dismiss based on lack of jurisdiction under the IAD.  For the following reasons, these decisions were neither contrary to, nor involved an unreasonable application of clearly established federal law, and Petitioner's claim will be denied.

In the findings section, the movant court opined that "[t]he outcome of the claim would not

be different had Mr. Rivera amended the motion to include the claim in 1999." (Resp. Exh. I at 8-9). Likewise, the Missouri Court of Appeals determined that Rivera's failure to argue Petitioner's convictions should be dismissed pursuant to section 217.490 not to be ineffective assistance of counsel. The record demonstrates that Mr. Rivera included this claim in his amended motion of April 18, 2002, and the court found no violations of the IAD. Further as opined by the motion court and the Missouri Court of Appeals, the Article III time limit claims were specifically raised and argued before the court by Mr. Krehmeyer on October 21, 2002. The courts found no violation of the IAD. Furthermore, the motion court concluded that there was no reasonable probability of a different result if Mr. Rivera had pursued his pro se motion to dismiss. Likewise, the Missouri Court of Appeals noted that counsel cannot be deemed ineffective for failing to raise an argument that has no merit. (Resp. Exh. M at 3). These findings are fairly supported by the record and this Court finds no basis for departing from that analysis.

The state courts' rejection of Petitioner's claim constituted adjudication on the merits of the claim and must be reviewed under the deferential provisions of 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) requires federal habeas courts to test the findings of state courts only against clearly established federal law, as determined by the Supreme Court of the United States. Further, § 2254(d)(1) prohibits the issuance of a writ of habeas corpus unless the state court's decision is contrary to, or involved an unreasonable application of that clearly established law. Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time Petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it

is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Id. (quoting Williams, 529 U.S. at 410-11).

In the instant cause, the motion court and the Missouri Court of Appeals articulated the Strickland standard of review (Resp. Exhs. I at 7-8 and M at 2-3) and found Petitioner not to have shown prejudice by counsel's conduct. Such determinations were not contrary to, and did not involve an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

Based on the above, the state courts' decisions denying Petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has Petitioner demonstrated such. Therefore, it cannot be said that the state courts' adjudication of the instant claims "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. §2254(d)(1). Neither has Petitioner shown that the courts' determinations "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. §2254(d).

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that the petition of Tommy L. Finley for a writ of habeas

corpus be **DISMISSED** without further proceedings.

　　　　**IT IS FURTHER ORDERED** that Petitioner's Motion to Expedite Case Disposition (Docket No. 19) is **DENIED AS MOOT**.


　　　　　　　　　　　　　　　　　　　　　　　_____/s/ Terry I. Adelman_____
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE


Dated this ___25th__ day of September, 2009.